**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES F. SCHMIDT, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GOLDEN STAR RESOURCES LTD., SAM COETZER, ANDREW WRAY, DANIEL OWIREDU, and ANDRE VAN NIEKERK, | |
| Defendants. | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Plaintiff James F. Schmidt ("Plaintiff") alleges the following upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC") made by Golden Star Resources Ltd. ("Golden Star" or the "Company") and related parties; (b) review and analysis of press releases and other publications disseminated by Golden Star and related parties; (c) review and analysis of shareholder communications, conference calls and postings on Golden Star's website concerning the Company's public statements; (d) review and analysis of news articles concerning Golden Star and related parties; and (e) review of other publicly available information concerning Golden Star, related parties, and/or the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of all persons or entities other than Defendants that purchased or otherwise acquired Golden Star securities from February 20, 2019 through July 30, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges that Defendants violated the Exchange Act by publishing false and misleading statements to artificially inflate the Company's share price.

2.     Golden Star is a mid-tier gold mining company with operating mines located in Ghana.  Substantially all the Company's revenue is generated through two underground

1

mines called Wassa and Prestea.  Prior to the start of the Class Period, the Prestea mine, which had previously not been in commercial operation for over 15 years, was experiencing operational issues that were negatively affecting the mine's performance. Specifically, Golden Star claimed that Prestea was performing poorly because of various issues related to drilling and blasting and positioning of equipment.

3.     As a result of Prestea's issues, Golden Star completed an operational review of the Prestea mine in September 2018, whereby the Company supposedly implemented significant changes to improve the mine's performance, including changes to its drilling techniques and training of its workforce.

4.     At the start of the Class period, Golden Star claimed that the operational changes and "right-sizing" of the Prestea mine were "complete."  The Company also repeatedly claimed that it was seeing "tremendous improvement" in the operational metrics and performance of the Prestea mine and that previous "blasting" issues had been rectified, stating that "we had issues with blasting and we've got over those issues and we are blasting consistently now."  With mining issues at Prestea seemingly fixed and operational performance improving, Golden Star provided optimistic guidance throughout the Class Period regarding the Company's production goals, the quality and grade of that production, as well as the cost per ounce of that production for both Prestea and Wassa.

5.     In reality, however, Golden Star's statements about improvements at Prestea were false, and the Company's financial guidance for both Prestea and Wassa was

2

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

baseless.  Investors learned the truth on July 31, 2019, when Golden Star announced disappointing second quarter 2019 financial results whereby the Company was forced to materially cut its production guidance and increase its cash operating cost estimates.  In doing so, the Company admitted that a laundry list of issues had negatively impacted its mines, including the use of insufficient geological and geotechnical data and poor drilling strategies and techniques, such as continued improper "blasting."

6.      In reaction to the Company's disclosures, Golden Star's stock price declined $0.75 per share, or 17.44%, from a closing price of $4.30 per share on July 30, 2019, to a closing price of $3.55 per share on July 31, 2019, wiping out tens of millions in market capitalization.

7.      Plaintiff and the other Class members have suffered significant damages because of Defendants' false and misleading statements and omissions.

## **JURISDICTION AND VENUE**

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered,

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the subsequent damages took place in, and the Company maintains locations in this judicial district.

11.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

12.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.     Defendant Golden Star is incorporated in Canada, and the Company's principal executive offices are located in Toronto, Canada.  Golden Star common stock trades on the NYSE American under the symbol "GSS."

14.     Defendant Andrew Wray ("Wray") has been the Company's Chief Executive Officer ("CEO") since May 1, 2019 and a Director of the Company since October 2, 2018.

15.     Defendant Sam Coetzer ("Coetzer") served as the President and CEO of Golden Star from January 1, 2013 through April 30, 2019.

16.     Defendant Daniel Owiredu ("Owiredu") served as the Company's Executive Vice President and Chief Operating Officer ("COO") from January 2013 through July 2019.  Owiredu has served as the Company's President since July 8, 2019.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

17.     Defendant Andre van Niekerk ("Niekerk") has served at all relevant times as the Company's Executive Vice President and Chief Financial Officer.

18.     Defendants Wray, Coetzer, Owiredu and Niekerk are collectively referred to herein as the "Individual Defendants."

19.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

20.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all the wrongful acts complained of herein were carried out within the scope of their employment.

21.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

22.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.    Golden Star is a gold mining company that owns and operates the Wassa and Prestea underground mines in the West African country of Ghana.   The Wassa underground mine began commercial production in 2017, and the Prestea underground mine began commercial production in 2018.  The Company describes both mines as "high grade, low cost underground mines, located on Ghana's prolific Ashanti Gold Belt."

24.    On February 1, 2018, Golden Star issued a press release entitled "Golden Star Achieves Commercial Production at Prestea Underground Gold Mine," announcing that commercial production had begun at Prestea and that exploration drilling was underway there to increase the annual production rate and extend the life of the mine.  Notably, and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

as the press release pointed out, it had been over 15 years since the mine was previously in commercial production.

25.     On August 1, 2018, Golden Star announced that it had entered into a long term, strategic relationship with La Mancha Holding S.A.R.L. ("La Mancha") to support Golden Star's growth into a leading African gold producer.  As part of the transaction, La Mancha would inject approximately $125.7 million of cash into Golden Star, purportedly to accelerate underground development and production at the Wassa and Prestea underground mines and accelerate exploration and mineral reserve definition drilling at the mines.

26.     Shortly thereafter, on September 30, 2018, in a press release providing an update on Golden Star's Prestea operations, then-CEO Coetzer stated: "[W]e are taking decisive action at Prestea to ensure that the operation begins 2019 on a robust footing."  In the same press release, the Company highlighted that it was going to reduce annual cash operating costs at Prestea by downsizing the processing plant, rightsizing the workforce, and optimizing the onsite management structure.  At that time, the Company stated that "the ramp up of Prestea Underground has been slower than expected due to issues with longhole drilling and blasting productivities and the handover to in-house Alimak training . . . and this resulted in a lower than anticipated production rate during the year-to-date."

27.     On October 2, 2018, Golden Star announced the completion of La Mancha's strategic investment.  Coetzer stated that the investment from La Mancha "will allow us

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

to expedite our exploration and expansion programs at both our Wassa Underground and Prestea Underground Gold Mines" and that it "verifies the strong potential of our assets and the caliber of our management team."

### Materially False and Misleading Statements Issued During the Class Period

28.     On February 19, 2019, after the close of the financial markets, Golden Star issued a press release announcing financial results for the fourth quarter and full year ended December 31, 2018.  In the press release, Golden Star stated that "Right-sizing of Prestea Underground operations [was] completed," and that "at Prestea, we faced some operational challenges that we believe we have now overcome with rightsizing of the mine having been completed by year end."  The Company also provided full year 2019 guidance in terms of gold production and cash operating cost per ounce.  Specifically, Golden Star estimated 50,000-60,000 ounces of gold production at Prestea, 170,000-180,000 ounces at Wassa, with consolidated gold production of 220,000 to 240,000 ounces; and estimated $880-$1,000 per ounce of cash operating costs at Prestea, $560-$600 per ounce at Wassa, and consolidated costs of $620-$680 per ounce.

29.     During the corresponding conference call held the next day, Coetzer represented: "Production guidance for 2019 on a consolidated basis is between 220,000 and 240,000 ounces.  All-in sustaining cost guidance is between $875 and $955 per ounce."  Coetzer also represented: "Over the last 3 years, we embarked on establishing to producing underground mines, and in doing so, we realized that Wassa is now on its way

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

to becoming a world-class operation.  It's demonstrated this over the last few years and it's now become our flagship asset . . . . Wassa continues to improve and is now reaching close to 4,000 tonnes per day as we enter into 2019."  In addition, Coetzer represented that the Company was now putting "the noise of the company that we specifically saw in the fourth quarter behind us.  We are focusing on operating two underground mines.  We are now set to produce between 220,000 and 240,000 ounces in 2019."

30.     Also on the call, Owiredu represented that the Company's "focus now is to stabilize production" at Prestea and "[a]s we start into a new year, we have seen improvements at Prestea already."  Owiredu reiterated that Prestea was improving and stated, "[I] just want to reiterate the tremendous improvement we're already seeing at Prestea."  During the question and answer portion of the call, analysts specifically asked Defendants about Prestea and the reserve model.  Owiredu stated that "most our metrics are seeing tremendous improvement," and that "we had issues with blasting and we've got over those issues and we are blasting consistently now."  Defendants were also asked whether "there was any rightsizing left at Prestea or if this has been completely finished in 2018."  Coetzer affirmatively responded, "its's 98 percent complete" and "for all intents and purposes, it's complete now."  Coetzer further represented that in the fourth quarter of 2018, the Prestea operation "faced with various challenges," but "these were one-offs and will not present themselves in the future."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

31.     With respect to Wassa, Owiredu represented that the "team at Wassa has really stabilized and there are things to take away here: the targeted mining rate is 3,500 tonnes per day, which we are already reaching and exceeding that in the early part of this year; the ramp up capacity of 4,000 tonnes per day, and a processing plant capacity of 8,000 tonnes per day. I think we have a world-class asset here."  Coetzer also represented that in the "first two months of this year" the Company was running "at higher grades or the grades that you're used to."

32.     On February 20, 2019, Golden Star filed its "Management's Discussion and Analysis For the Year Ended December 31, 2018" on a Form 6-K with the SEC.  The Company represented in the Form 6-K that during the fourth quarter of 2018, the Company implemented "the Prestea improvement plan . . . which included right-sizing the workforce at Prestea and optimizing the management and supervisory structure." Specifically, Golden Star represented that "the Company concluded the business right-sizing of Prestea Underground's operations by reducing the workforce and establishing a lower operating cost base."  The Company also represented that "the processing plant was converted to a low tonnage, high grade configuration allowing it to efficiently treat underground ore production" and "improvements were being recorded in Prestea's lead production indicators" at the end of 2018.  The Form 6-K also reiterated the Company's full year 2019 guidance in terms of gold production and cash operating cost per ounce.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

33.     On March 28, 2019, Golden Star issued a press release announcing a mineral reserve and mineral resource update.   Specifically, as of December 31, 2018, the Company represented, "Proven and Probable Mineral Reserves increased by 6% to 1.8 million ounces of gold after mined depletion"; the "Wassa Underground Mineral Reserve increased by 47% after mined depletion"; and the "Prestea Mineral Reserve decreased by 36% including mined depletion."   With respect to the Wassa mine, the Company also represented that the "total Wassa Mineral Reserve has increased by 23% after 2018 mining depletion" which was "attributable to strong results from the 2018 underground definition drilling program combined with a stope design optimization process."   With respect to Prestea, the Company represented that the "underground Mineral Reserve has reduced by 146,000 ounces as a result of 2018 mining depletion and changes to the resource model following definition drilling and underground development."

34.     In the press release, Defendant Coetzer represented the following:

The updated Mineral Reserve at Wassa Underground shows a significant increase, specifically in the upper levels of the mine, and strongly suggests that there is excellent potential to increase our production rate in the near term. In addition, the increase of over 1 million ounces of gold in Inferred Mineral Resources at the Wassa complex to over 6.4 million ounces of gold further demonstrates the potential for the mine. The Company continues to improve its view of the orebody and I am very excited by how Wassa Underground is turning into a world class mine.

At Prestea, the mine is endowed with good infrastructure and the focus remains on improving operations. The Company continues to address the ramp up challenges with the Alimak shrinkage mining method, and expects steady productivity improvements this year from the mine.

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

35.     On March 29, 2019, Golden Star filed an annual report on Form 40-F with the SEC.  The Form 40-F contained certifications pursuant to the Sarbanes-Oxley Act of 2002 and was signed by Coetzer and Niekerk.  Golden Star represented in the Form 40-F that, during the fourth quarter of 2018, it had implemented "the Prestea improvement plan . . . which included right-sizing the workforce at Prestea and optimizing the management and supervisory structure."  Specifically, Golden Star represented that "the Company concluded the business right-sizing of Prestea Underground's operations by reducing the workforce and establishing a lower operating cost base."  The Company also represented that "the processing plant was converted to a low tonnage, high grade configuration allowing it to efficiently treat underground ore production" and "improvements were being recorded in Prestea's lead production indicators" at the end of 2018.

36.     On April 17, 2019, Golden Star announced that Coetzer was leaving the Company as of April 30, 2019, and would not be standing for election as a director of the Company on the Annual General Meeting taking place on May 2, 2019.  Coetzer was replaced by Defendant Wray from La Mancha.

37.     On May 1, 2019, Golden Star issued a press release announcing first quarter 2019 financial results and represented that the Company "remains on track to achieve its consolidated full year 2019 guidance."  In the press release, Wray represented: "Our operation at Wassa continues to deliver on its promise, not only with the low cost, record underground production seen during the first quarter but also the recently released reserve

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

and resource update which demonstrated continued growth in the ore body and a significant step up in its reserve base."

38.    45.    On May 2, 2019, Golden Star conducted an earnings call where Wray represented: "In terms of 2019, our production guidance of 220,000 ounces to 240,000 ounces, broadly in line with 2018. An AISC of $875 to $955 an ounce."  Moreover, Wray represented the following:

> [I]t's a solid to the year for Golden Star. And as a result of that, we're maintain [*sic*] our full year guidance. But I think it's fair to say there is certainly more to come from the assets.  Wassa, as you've seen, continues to move ahead of forecast and ahead of expectations, and we will continue to push three [*sic*], but in terms of our understanding of the orebody but also in terms of mining it out, pushing development, enabling underground access to better understand how we can increase the rate of extraction, and ultimately utilize the processing capacity that we have there.

39.    In answering an analyst's question whether it is sustainable for the remainder of the year for Wassa Underground to produce 3,600 tonnes per day that the Company averaged in the first quarter, Owiredu represented: "The simple answer to that is yes. We see the potential to maintain it at the 3,600 and above or down to 4,000 sustainably through the current year."  In response to a question from an analyst whether there is any "change [to] the reserve statement," Wray represented: "No."

40.    With respect to Wassa, Owiredu represented that the Company considers it as its "flagship asset and it continues to exceed our expectation" and "a 43% increase in production from Wassa Underground, resulting from an increase in mining rates as total tonnes mined and prices increased compared to the same period in 2018."

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

41.     On June 3, 2019, after the market closed, Golden Star disclosed that CSA Global will begin a "technical and operation review" of the Prestea underground mine. As part of the review, "[a]ll aspects of technical, operational and management areas will be examined in order for recommendations to be set forth to the Company for improvements at Prestea.  The Company expects to communicate an update in Q3 of 2019."

42.     A little over two months after announcing that it was replacing the Company's CEO, on June 26, 2019, Golden Star announced additional changes to the management team, announcing that Owiredu was stepping down out of the role of Executive Vice President and COO effective July 8, 2019.  The Company also disclosed in the same press release that its Chief Technical Officer, who was in charge of mine exploration, was leaving his position as well effective September 30, 2019.

43.     The above statements in paragraphs 28-42 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose that: (i) the Company had insufficient geological and geotechnical data in its Prestea mine; (ii) the Company had experienced deficiencies in its operating practices and mining methods including inaccurate long hole drilling and blasting in its Prestea mine; (iii) the Company did not have the mining flexibility and more measured resources to ensure higher reserve grade; (iv) the Company had experienced increased tonnage at much lower grade where it

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

had to supplement some of the production with oxide material; (v) the Company had excessive dilution which drove lower mining rates at the Prestea mine; and (vi) as a result of the foregoing, Defendants' public statements were materially false and/or misleading and/or lacked a reasonable basis.

## **THE TRUTH EMERGES**

44.     On July 31, 2019, prior to the open of the financial markets, Golden Star shocked investors when it announced it was dramatically cutting its gold production guidance and increasing its cash operating costs.  Specifically, the consolidated production was revised to as low as 190,000 ounces from as high as 240,000 ounces.  Likewise, consolidated cash operating costs were increased dramatically to as high as $850 per ounce from as low as $620 ounce.

45.     In disclosing the material changes to its financial guidance, Golden Star admitted that it had contracted CSA Global to review Prestea's "operations with the mandate to take a holistic approach to understanding the challenges facing the operation." CSA Global "identified a range of issues affecting performance at Prestea that negatively affected performance and drove lower mining rates as well as excessive dilution."  These issues included "insufficient geological and geotechnical data, poor definition of the reef position, inadequate alignment of Alimak raises, inaccurate long hole drilling and blasting, low equipment mechanical availability and lack of access to the top level."  The Company

---

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

also admitted that the grade or quality of production at Wassa would be much lower than originally planned.

46.     As a result of CSA Global's review, the Company disclosed two main initiatives:

> Firstly, the prioritization and implementation of a number of low-cost, quick win initiatives are being undertaken with immediate effect, including increased definition drilling, development of a geotechnical block model, improved supervision, additional critical small equipment, capacity building and better-defined key performance indicators. Secondly, the long-term mine plan will be redesigned and will assess whether the current mining method or a revised Alimak design with shorter raises is appropriate and whether a complementary mining method to bring additional flexibility is needed.

47.     The CSA Global findings contradicted the Defendants' earlier statements regarding Prestea in that Prestea was still suffering from the previous issues that were deemed to be fixed, such as with blasting.  In addition, the CSA report revealed a host of other operational issues that were negatively affecting the performance of Prestea and Wassa.

48.     Later in the day, Golden Star conducted an earnings call to discuss its 2019 second quarter financial results where Wray reiterated revision to Golden Star's "production guidance for 2019, and as a result the cost guidance.  And we're now looking at a consolidated level at 190,000 to 205,000 ounces for the year, which is down 220,000 to 240,000.  At Wassa we expect 150,000 to 160,000 ounces."  With respect to Prestea, Wray disclosed that in the second half 2019, "the real focus" will be "getting that asset back to deliver both better grade and increased tonnes so we can return it to free cash

16

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

flow." Further, Wray disclosed that the Company needs "to make sure we have the mining flexibility and sufficient forward information to ensure that the grade is managed closer to reserve grade. And that way you'll continue to see that asset grow, deliver."

49.     Golden Star's current COO, Graham Crew ("Crew"), disclosed that during the quarter, there was "increased tonnage at a slightly lower grade overall" and there was "much lower grade than in the plan. And we've supplemented some of the production there with oxide material from the open pits. So overall, much lower grades than expected. And the key issues in the underground thing, excessive dilution from the stopes, albeit some of the trades we were expecting as we move to that southern portion of the orebody were still lower. But the dilution is a real issue for us." As a result, Crew disclosed that the "guidance for the second half is based on similar productivity with higher grades coming from the definition drilling and some of the work that we're doing to reduce the unplanned dilution there."

50.     Similarly, Crew revealed that Golden Star saw "the grades lower . . . where we didn't have the additional definition drilling." Crew also disclosed that, based on the engagement of CSA Global, what the Company needs "to progress and work[] on, [is] the lack of definition drilling," the need for "more drill density for the planning and to better plan for productivity and dilution control," and found "that the raise length is too long, and that's affecting productivity and dilution." Therefore, Crew revealed that the Company needs "to get a better handle on what the reserve grade in terms of planned

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

dilution and factors for unplanned dilution will be."  Crew further disclosed: "So if you go back to the start of 2019, there was roughly 50% of our planned ounces were from the measured category and we've chewed through a lot of that. And we're sort of getting to areas where we didn't have measured resource for the plan. So the key is to get that drilling in place so that we can be planning on a measured resource."

51.     Analysts quickly took notice of the revised 2019 guidance and the grade underperformance of the two mines.   For example, one analyst confirmed that "[m]anagement indicated that the grade underperformance was specific to the area being mined" with respect to the Wassa mine.  Likewise, CIBC noted that "Wassa lost some of the operational momentum that it had gained in previous quarters" and CIBC is taking "a wait-and-see approach" as it sees Prestea as a "risk to the stated mineral reserve grade at year-end."   Another analyst noted that the increased costs at the Prestea mine provide "evidence that Prestea challenges continue."   Similarly, another analyst commented that the condition at Prestea is forcing Golden Star "to re-evaluate the current operating practices and mining methods."

52.     In response to these revelations, Golden Star's share price fell $0.75 per share, or 17.44%, to close at $3.55 per share on July 31, 2019.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Golden Star securities during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of Golden Star and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Golden Star securities were actively traded on NYSE American.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Golden Star;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Golden Star to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false statements;

- whether the prices of Golden Star securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.    A class action is superior to all other available methods for the fair and

20

efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Golden Star shares met the requirements for listing, and were listed and actively traded on, the NYSE American, an efficient market;

- As a public issuer, Golden Star filed periodic public reports;

- Golden Star regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Golden Star's securities were liquid and traded with sufficient volume during the Class Period; and

- Golden Star was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

21

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

61.     Based on the foregoing, the market for Golden Star securities promptly digested current information regarding Golden Star from all publicly available sources and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

22

misleading.

66.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Golden Star securities during the Class Period.

67.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Golden Star were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These Defendants by virtue of their receipt of information reflecting the true facts of Golden Star, their control over, and/or receipt and/or modification of Golden Star's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Golden Star, participated in the fraudulent scheme alleged herein.

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

68.     The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Golden Star personnel to members of the investing public, including Plaintiff and the Class.

69.     As a result of the foregoing, the market price of Golden Star securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Golden Star securities during the Class Period in purchasing Golden Star securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

70.     Had Plaintiff and the other members of the Class been aware that the market price of Golden Star securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Golden Star securities at the artificially inflated prices that they did, or at all.

71.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

72.     By reason of the foregoing, Defendants have violated Section 10(b) of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Golden Star securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.     During the Class Period, the Individual Defendants participated in the operation and management of Golden Star, and conducted and participated, directly and indirectly, in the conduct of Golden Star's business affairs.  Because of their senior positions, they knew the adverse non-public information about Golden Star's misstatement of revenue and profit and false financial statements.

75.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Golden Star's financial condition and results of operations, and to correct promptly any public statements issued by Golden Star which had become materially false or misleading.

76.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Golden Star disseminated in the marketplace during the Class Period concerning Golden Star's results of operations.  Throughout the Class

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Period, the Individual Defendants exercised their power and authority to cause Golden Star to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Golden Star within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Golden Star securities.

77.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Golden Star.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A.   Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.   Awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.   Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.   Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1

## **JURY TRIAL DEMANDED**

2

Plaintiff hereby demands a trial by jury.

3

4

Dated: May 27, 2020                         Respectfully submitted,

5

6

POMERANTZ LLP

7

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)

8

1100 Glendon Avenue, 15th Floor

9

Los Angeles, CA 90024

10

Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

11

12

POMERANTZ LLP
Jeremy A. Lieberman

13

(*pro hac vice* application forthcoming)

14

J. Alexander Hood II
(*pro hac vice* application forthcoming)

15

600 Third Avenue, 20th Floor

16

New York, New York 10016

17

Telephone: (212) 661-1100
Facsimile: (212) 661-8665

18

Email: jalieberman@pomlaw.com

19

Email: ahood@pomlaw.com

20

POMERANTZ LLP

21

Patrick V. Dahlstrom

22

(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505

23

Chicago, Illinois 60603

24

Telephone: (312) 377-1181
Facsimile: (312) 377-1184

25

Email: pdahlstrom@pomlaw.com

26

BRONSTEIN, GEWIRTZ &

27

GROSSMAN, LLC

28

Peretz Bronstein

27

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**Submission Date**

2020-04-03 14:05:37

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Golden Star Resources Ltd. ("Golden Star" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Golden Star securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Golden Star securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Golden Star securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

james  schmidt

**Signature**

3/3/20, 3:09 PM



**Full Name**

james f  schmidt



**Golden Star Resources Ltd. (GSS)**                                              **Schmidt, James F.**

**List of Purchases and Sales**

| Transaction Type | Date* | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Account 1 | | | |
| Purchase | 4/1/2019 | 100 | $3.9850 |
| Purchase | 4/1/2019 | 200 | $3.9870 |
| Purchase | 4/1/2019 | 3,000 | $3.9747 |
| Purchase | 4/1/2019 | 4,700 | $3.9900 |
| Purchase | 4/1/2019 | 5,000 | $4.0000 |
| Purchase | 6/18/2019 | 7,000 | $3.5500 |
| Purchase | 7/29/2019 | 400 | $4.1600 |
| Purchase | 7/29/2019 | 1,200 | $4.1500 |
| Purchase | 7/29/2019 | 8,400 | $4.1700 |
| Sale | 5/6/2019 | (1,000) | $3.9010 |
| Sale | 5/6/2019 | (600) | $3.9000 |
| Sale | 5/6/2019 | (400) | $3.9001 |
| Sale | 5/9/2019 | (5,000) | $4.0809 |
| Account 2 | | | |
| Sale | 5/1/2019 | (1,000) | $4.1301 |
| Sale | 5/1/2019 | (700) | $4.1300 |
| Sale | 5/1/2019 | (100) | $4.1400 |
| Sale | 5/1/2019 | (100) | $4.1301 |
| Sale | 5/1/2019 | (100) | $4.1300 |
| Sale | 5/9/2019 | (6,000) | $4.0301 |
| Sale | 5/9/2019 | (4,500) | $4.0517 |
| Sale | 5/9/2019 | (300) | $4.0604 |
| Sale | 5/9/2019 | (100) | $4.0600 |
| Sale | 5/9/2019 | (100) | $4.0600 |

*Settlement Dates